UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


WARREN LEE EDWARDS,

                    Petitioner,

v.                                    Case No. 3:04-cv-374-J-20HTS

JAMES V. CROSBY, JR.,
et al.,

                    Respondents.

_____

## ORDER

### I. Status

Petitioner Warren Lee Edwards, an inmate of the Florida penal system proceeding *pro se*, initiated this action by filing a Petition for Writ of Habeas Corpus (Doc. #1) pursuant to 28 U.S.C. § 2254 on May 19, 2004. Petitioner challenges a 2000 state court (Duval County, Florida) judgment of conviction for written threats on the following grounds: (1) the trial court erred in excluding the testimony of Horace Williams based on the attorney-client privilege; (2) the trial court erred in denying Petitioner's motions for judgment of acquittal; (3) ineffective assistance of

trial counsel for failure to interview, depose and call witnesses; (4) prosecutorial misconduct for offering the perjured testimony and ineffective assistance of counsel for allowing the perjured testimony; (5) ineffective assistance of trial counsel for failure to object to the State's failure to properly give written notice to defense counsel to use Petitioner's prior conviction as relevant evidence to prove Petitioner's guilt; (6) ineffective assistance of trial counsel for failure to renew an objection during trial; (7) ineffective assistance of trial counsel for failure to object to speculation of the alleged reason why Petitioner mailed a written threat; (8) ineffective assistance of trial counsel for failure to request a jury instruction for Petitioner's prior conviction; and, (9) prosecutorial misconduct and ineffective assistance of trial counsel for failure to object when the prosecutor, during closing argument, told the jury to disregard Petitioner's testimony.

Respondents filed an Answer to Petition for Writ of Habeas Corpus (Doc. #9) (hereinafter Response).  They submitted exhibits in support of their Response.[1] Petitioner was instructed on how to properly respond to a motion to dismiss and/or for summary judgment.  See Court's Order to Show Cause and Notice to Petitioner (Doc. #4).   Petitioner has properly responded to Respondents' Response.  This case is now ripe for review.

_____

[1] Respondents' exhibits will be hereinafter referred to as "Ex."

## II. Procedural History

On January 14, 2000, Petitioner Warren Lee Edwards was charged with written threats to kill or do bodily injury, and the Amended Information charged that:

> WARREN LEE EDWARDS in the County of Duval and the State of Florida, did write or compose and did, on or between the 8th day of July, 1999 and the 12th day of July, 1999, send or procure the sending of a letter or inscribed communication, so written or composed, to Judge Jean Johnson, containing a threat to kill or to do bodily injury to the person of Judge Jean Johnson, contrary to the provisions of Section 836.10, Florida Statutes.

Ex. A at 32. After a trial, the jury found Petitioner guilty as charged. Id. at 65. Petitioner was sentenced to fifteen years of imprisonment, to run consecutively to his sentence in another case. Id. at 69-73; see http://www.dc.state.fl.us/activeinmates (Florida Department of Corrections website).

On appeal, Petitioner, through counsel, raised the following issues: (1) the trial court erred in excluding the testimony of Horace Williams based on the attorney-client privilege since no privilege existed and the exclusion of Williams' testimony denied Petitioner his rights to due process and to present a defense, and (2) the trial court erred in denying Petitioner's motions for judgment of acquittal since the evidence did not refute his reasonable hypothesis of innocence that he did not send or procure the sending of the letter to Judge Johnson. Ex. C; Ex. D. On June 27, 2001, the appellate court per curiam affirmed without a written

3

opinion.  Edwards v. State, 790 So.2d 408 (Fla. 1st DCA 2001); Ex.

E.  The mandate issued on July 13, 2001.  Ex. F.

On November 13, 2001, Petitioner filed a *pro se* motion for

post conviction relief, raising seven claims: (1) ineffective

assistance of counsel for failure to object to the State's not

filing written notice to the defense that it would disclose to the

jury Petitioner's prior conviction and statements made at the

sentencing hearing; (2) ineffective assistance of counsel for

failure to object to the State's introduction of the prior

conviction; (3) ineffective assistance of counsel for failure to

object to the prosecutor's comments to disregard Petitioner's

testimony; (4) ineffective assistance of counsel for failure to

interview or depose witnesses; (5) ineffective assistance of

counsel for failure to request a jury instruction for Petitioner's

prior conviction; (6) ineffective assistance of counsel for failure

to object to the State's speculation of Petitioner's motive for

sending the letter; and, (7) ineffectiveness for failing to object

to the State's offering perjured testimony.  Ex. G at 1.   On

December 6, 2002, the trial court, in a lengthy written order,

denied the motion.  Id. at 101-08.  Petitioner appealed; however,

he did not file a brief.  Ex. H.   On October 28, 2003, the

appellate court per curiam affirmed without a written opinion.

Edwards v. State, 858 So.2d 1055 (Fla. 1st DCA 2003); Ex. I.   The

mandate issued on November 25, 2003.  Ex. J.

While the motion for post conviction relief was pending, Petitioner filed a petition for writ of habeas corpus in the state appellate court on December 24, 2001, challenging the effectiveness of appellate counsel for failure to raise the following arguments: (1) the court's denial of Petitioner's motion to exclude the prior criminal case statements of Petitioner that were read by the court reporter, and (2) the court's denial of Petitioner's motion to exclude police officers Scott Bell and Willie Gary Fussell's testimony of Petitioner's statements that he made in court. Ex. K. On February 6, 2002, the appellate court per curiam denied the petition for writ of habeas corpus. Edwards v. State, 812 So.2d 406 (Fla. 1st DCA 2002); Ex. L. On March 22, 2002, Petitioner's motion for rehearing was denied. Ex. M.

The Petition for Writ of Habeas Corpus (dated May 13, 2004) and filed in this Court on May 19, 2004, is timely filed within the one-year period of limitation. See 28 U.S.C. § 2244(d); Response at 4-5.

### III. THE JURY TRIAL

Judge Jean Johnson testified at Petitioner's trial that she had presided over Petitioner's prior case (Case No. 97-7651-CFA), in which Petitioner had entered a guilty plea with a sentencing cap of twenty years in prison. Tr. at 181. Judge Johnson had received several letters and drawings from Petitioner between the date of his plea (January 29, 1999) and his sentencing on July 8, 1999, and

5

she had read the letters and sent them to the court file; none of the letters contained threats. Id. at 181-88.

Judge Johnson sentenced Petitioner to nineteen years in prison on Thursday, July 8, 1999, and Petitioner was "disruptive" during the sentencing proceeding. Id. at 184, 188, 208, 209, 213. Carla Williams (Judge Johnson's judicial assistant) testified that she received a letter addressed to Judge Johnson on Monday, July 12, 1999, that she read the letter and then gave it to the judge. Id. at 175-77. On July 12, 1999, when Judge Johnson received the letter from Petitioner Edwards, she contacted the police because she considered the letter to be "a serious death threat that went beyond the -- went beyond anything that I had received before or had seen any other Judge receive." Id. at 189, 191. Judge Johnson thought some of Petitioner's previous letters were "a little strange" and "unusual," but she did not consider them threatening. Id. at 192. Judge Johnson did not know whether Petitioner had mailed the letter himself. Id. at 193-94.

Edmund Powell, the court reporter assigned to Judge Johnson's courtroom on July 8, 1999, read the transcript of the proceedings for that day. Id. at 197-200, 207. Powell read the transcript of Petitioner's dialogue with the court, in which Petitioner told Judge Johnson, "[t]his sucks, ma'am." Id. at 208. Petitioner began to sing, "la, la, la," while Judge Johnson explained that he could appeal and that she had appointed the Public Defender for the

appeal. Id. at 208-09. Petitioner told Judge Johnson: "You chose a fat woman over me when you could see that she was lying. You chose the fat woman." Id. at 209.

Officer Scott Bell, who was working as a bailiff in Judge Johnson's courtroom on July 8, 1999, testified that he and Officer Dearborn escorted Petitioner out of the courtroom after the sentencing. Id. at 211-13. Bell said that Petitioner looked over his shoulder on the way out of the door and stated, "you fat Bitch, you fat Bitches are in this together," and "I'll get you for this." Id. at 213. Judge Johnson and the victim in the case were both still present in the courtroom. Id. at 213-14.

Judge Johnson gave the letter she had received on July 12, 1999, to Detective Willie Gary Fussell of the Jacksonville Sheriff's Office, and the letter was processed for fingerprints. Id. at 215-16. Detective Fussell interviewed Petitioner on July 13, 1999, after Judge Johnson received the letter. Id. at 217-21. Petitioner told Fussell that he was not treated fairly and wanted another trial. Id. at 222. Fussell showed Petitioner copies of the letter and envelope and asked whether he wrote the letter. Id. Petitioner responded, "I am not going to admit that I wrote the letter, or say that I didn't write it." Id. at 223. Fussell noted that Petitioner "indicated that he knew that the letter was from a W. Lee but his name is Warren Lee." Id.

Latent print examiner Michelle Lynn Royal testified that there were no identifiable latent prints on the letter. Id. at 230. Diane McDougall was qualified as an expert in questioned document examination. Id. at 232. McDougall compared the letter and envelope sent to Judge Johnson with other letters written by Petitioner Edwards and concluded that both the letter and envelope were "very probably" written by Petitioner. Id. at 234-37. The defense stipulated that Petitioner Edwards was the author of both the letter and the envelope. Id. at 239.

The State rested its case, and defense counsel moved for a judgment of acquittal on the ground that, although Petitioner wrote the letter and Judge Johnson received the letter, the State failed to prove that Petitioner sent or procured to send the letter. Id. at 240-41. The trial judge denied the motion for judgment of acquittal. Id. at 242.

Two witnesses testified for the defense. Officer John Crump worked in the mail room at the pretrial detention facility and explained that an inmate's mail was required to have the outgoing address as well as a return address with the inmate's name, docket number and jail address. Id. at 250. The requirements were published in the inmate handbook, which every inmate received when entering the jail. Id. at 251. Crump handled thousands of letters in a week and did not routinely check mail for a proper return

address, so letters were normally sent through the mail even if they were not correctly addressed. Id. at 251-52.

Petitioner testified on his own behalf. Petitioner admitted that he wrote the letter to Judge Johnson because she sentenced him to nineteen years of imprisonment without a lawyer representing him. Id. at 253-60. He conceded that he wrote the letter to vent his anger and did not intend to mail the letter. Id. at 260-61, 269-71, 274, 275-76, 286. He explained:

> I sealed it, it was a letter I wanted to write for myself because normally when I get upset I write letters only to myself, I write down all the evil things that's [sic] going on and I calm myself down by writing. Ladies and gentlemen, this is what I do.
>
> . . . .
>
> My roommate, he evidently mailed the letter because he assumed by it being Judge Johnson mailed the letter out.

Id. at 262, 263. Petitioner and his roommate (Horace Williams) "had a little fuss about it" afterwards. Id. at 265-66. Petitioner insisted that he did not really mean for the letter to be mailed and did not tell Horace Williams to mail the letter. Id. at 266. Petitioner acknowledged that the letter was "in bad taste" and expressed his remorse for writing it. Id. at 265-66, 284, 286-87.

The defense rested and renewed the motion for judgment of acquittal, which was again denied. Id. at 290-91. The jury found

9

Petitioner guilty of written threats to kill or do bodily harm, as charged.   Ex. A at 65, Verdict;   Tr. at 332-33.   Petitioner was sentenced to fifteen years of imprisonment, to run consecutively to the sentence imposed in Case No. 97-7651-CFA.   Ex. A at 69-73, 174.

## IV. EVIDENTIARY HEARING

This Court has carefully reviewed the record and, for the reasons set forth more fully below, concludes Petitioner is not entitled to an evidentiary hearing.   A habeas corpus petitioner is entitled to an evidentiary hearing in federal court if he alleges facts which, if proven, would entitle him to habeas corpus relief. Smith v. Singletary, 170 F.3d 1051, 1053-54 (11th Cir. 1999) (citation omitted); Cave v. Singletary, 971 F.2d 1513, 1516 (11th Cir. 1992) (citing Townsend v. Sain, 372 U.S. 293 (1963)).   Here, the pertinent facts of the case are fully developed in the record before the Court.   Smith, 170 F.3d at 1054 (stating that a district court does not need to conduct an evidentiary hearing "if it can be conclusively determined from the record that the petitioner was not denied effective assistance of counsel").   No evidentiary proceedings are required in this Court.   High v. Head, 209 F.3d 1257, 1263 (11th Cir. 2000) (citing McCleskey v. Zant, 499 U.S. 467, 494 (1991)), cert. denied, 532 U.S. 909 (2001).   The Court can "adequately assess [Petitioner's] claim[s] without further factual development."   Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004).   Therefore, for the

reasons set forth above, an evidentiary hearing will not be conducted by this Court.

### V.   STANDARD OF REVIEW

On April 24, 1996, the President signed into law the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104-132, 110 Stat. 1214 (hereinafter AEDPA).  Since this action was filed after the effective date of AEDPA, the Court will analyze Petitioner's claims under 28 U.S.C. § 2254(d), as amended by AEDPA. Nelson v. Alabama, 292 F.3d 1291, 1294-95 (11th Cir. 2002), cert. denied, 538 U.S. 926 (2003); Fugate v. Head, 261 F.3d 1206, 1215 n.10 (11th Cir. 2001), cert. denied, 535 U.S. 1104 (2002); Wilcox v. Florida Dep't of Corr., 158 F.3d 1209, 1210 (11th Cir. 1998), cert. denied, 531 U.S. 840 (2000).

The Eleventh Circuit has described the standard of review under AEDPA:

> Title 28 U.S.C. § 2254 governs the authority of the federal courts to consider applications for writs of habeas corpus submitted by state prisoners.  Section 2254 was amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214 (1996), which was effective as of April 24, 1996.  AEDPA applies to all petitions filed after its effective date. . . .
>
> AEPDA "places a new constraint on a federal habeas court's power to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court" by establishing a deferential standard for reviewing state court judgments in these cases.  Williams v. Taylor,

529 U.S. 362, 412, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000).  Subsection (d) of § 2254 provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

AEDPA also makes clear that substantial deference is to be accorded a state court's findings of fact.  Section 2254(e)(1) provides that "a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

Henderson v. Campbell, 353 F.3d 880, 889-891 (11th Cir. 2003) (footnote omitted), cert. denied, 125 S.Ct. 44 (2004).

Clearly, the new 28 U.S.C. § 2254(d) creates a more deferential standard for federal court review of state court adjudications:  "[u]nless a state court decision is directly

12

contrary to Supreme Court case law, we review state court findings
of fact and conclusions of law for reasonableness." Van Poyck v.
Florida Dep't of Corr., 290 F.3d 1318, 1321 (11th Cir. 2002) (per
curiam), cert. denied, 537 U.S. 812 (2002), 537 U.S. 1105 (2003);
Mitchell v. Esparza, 540 U.S. 978 (2003) (per curiam) (holding that
the Ohio Court of Appeals' decision was not "contrary to" or an
"unreasonable application" of clearly established federal law and
stressing "the limits imposed on federal habeas review by 28 U.S.C.
§ 2254(d)").

The "contrary to" and "unreasonable application" clauses have
independent meaning and provide separate bases for federal habeas
review:

> "Under the 'contrary to' clause, a
> federal habeas court may grant the writ if the
> state court arrives at a conclusion opposite
> to that reached by this Court on a question of
> law or if the state court decides a case
> differently than this Court has on a set of
> materially indistinguishable facts."
> Williams, 529 U.S. at 412-13, 120 S.Ct. at
> 1523 (O'Connor, J., concurring). The
> "contrary to" clause "suggests that the state
> court's decision must be substantially
> different" from the controlling legal
> precedent. Fugate v. Head, 261 F.3d 1206,
> 1216 (11th Cir. 2001), cert. denied, --- U.S.
> ---, 122 S.Ct. 2310, 152 L.Ed.2d 1065 (2002)
> (quoting Williams, 529 U.S. at 405, 120 S.Ct.
> at 1519). A state court's decision that
> applies the correct legal rule would not fit
> within the "contrary to" clause even if the
> federal court might have reached a different
> result relying on the same law. See Williams,
> 529 U.S. at 404-06, 120 S.Ct. at 1519-20
> (O'Connor, J., concurring).

. . . .

>"Under the 'unreasonable application' clause,
>a federal habeas court may grant the writ if
>the state court identifies the correct
>governing legal principle from this Court's
>decisions but unreasonably applies that
>principle to the facts of the prisoner's
>case." Williams, 529 U.S. at 414, 120 S.Ct.
>at 1523 (O'Connor, J., concurring).   In
>deciding this issue, the federal court should
>consider whether the state court's application
>of the law was objectively unreasonable and
>should not apply the subjective "all
>reasonable jurists" standard. Id. at 409-10,
>120 S.Ct. at 1521-22.   The Supreme Court
>recently adhered to its pronouncements in
>Williams, stating that "we stressed in
>Williams that an unreasonable application is
>different from an incorrect one." Bell v.
>Cone, 535 U.S. 685, 122 S.Ct. 1843, 1850, 152
>L.Ed.2d 914 (2002).   The Court further noted
>that "a federal habeas court may not issue a
>writ under the unreasonable application clause
>'simply because that court concludes in its
>independent judgment that the relevant state-
>court decision applied clearly established
>federal law erroneously or incorrectly.'" Id.
>(quoting Williams, 529 U.S. at 411, 120 S.Ct.
>at 1522 (O'Connor, J., concurring)).

Wellington v. Moore, 314 F.3d 1256, 1260-61 (11th Cir. 2002).

The Eleventh Circuit has addressed the application of the "contrary to" clause in reviewing a state court adjudication:

>In applying the "contrary to" prong of
>AEDPA, we have recognized that where no
>Supreme Court precedent is on point, "we
>cannot say that the state court's conclusion
>. . . is contrary to clearly established
>Federal law as determined by the U.S. Supreme
>Court." McIntyre v. Williams, 216 F.3d 1254,
>1258 (11th Cir. 2000).

Washington v. Crosby, 324 F.3d 1263, 1265 (11th Cir.), cert. denied, 540 U.S. 965 (2003).

Under 28 U.S.C. § 2254(d)(2), this Court must determine whether the state court's adjudication resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Furthermore, AEDPA "also directs that a presumption of correctness be afforded factual findings of state courts, which may be rebutted only by clear and convincing evidence. See id. at § 2254(e)(1). This presumption of correctness applies equally to factual determinations made by state trial and appellate courts." Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted) (citing Sumner v. Mata, 449 U.S. 539, 547 (1981)).

Finally, for a state court's resolution of a claim to be an adjudication on the merits, so that the state court's determination will be entitled to deference for purposes of federal habeas corpus review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling. Wright v. Sec'y for the Dep't of Corr., 278 F.3d 1245, 1255 (11th Cir. 2002), cert. denied, 538 U.S. 906 (2003). Thus, to the extent that Petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under the new § 2254(d).

## VI. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citations omitted). "[H]indsight is discounted by pegging adequacy to 'counsel's perspective at the time' . . . and by giving a 'heavy measure of deference to counsel's judgments.'" Rompilla v. Beard, 125 S.Ct. 2456, 2462 (2005) (citations omitted). If counsel's performance falls "below the line of reasonable practice, there is a further question about prejudice, that is, whether 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Id. at 2467 (citation omitted).

The Eleventh Circuit has captured the essence of an ineffectiveness claim:

> [A] petitioner must show that his lawyer's performance fell below an "objective standard of reasonableness" and that the lawyer's deficient performance prejudiced the petitioner. See Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Establishing these two elements is not easy: "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." Waters v. Thomas, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc) (quoting Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994)).

For assessing a lawyer's performance, Chandler v. United States, 218 F.3d 1305 (11th Cir. 2000) (en banc) cert. denied, 531 U.S. 1204, 121 S.Ct. 1217, 149 L.Ed.2d 129 (2001), sets out the basic law: "Courts must indulge the strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment." Id. at 1314 (internal marks omitted). . . . Our role in reviewing an ineffective assistance claim is not to "grade" a lawyer's performance; instead, we determine only whether a lawyer's performance was within "the wide range of professionally competent assistance." See Strickland, 104 S.Ct. at 2066.

The inquiry into whether a lawyer has provided effective assistance is an objective one: a petitioner must establish that no objectively competent lawyer would have taken the action that his lawyer did take." See Chandler, 218 F.3d at 1315. . . .

A petitioner's burden of establishing that his lawyer's deficient performance prejudiced his case is also high. "It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test." Strickland, 104 S.Ct. at 2067. Instead, a petitioner must establish that a reasonable probability exists that the outcome of the case would have been different if his lawyer had given adequate assistance. See id. at 2068.[2]

Van Poyck, 290 F.3d at 1322-23 (footnotes omitted).

_____

[2] However, "when a defendant raises the unusual claim that trial counsel, while efficacious in raising an issue, nonetheless failed to preserve it for appeal, the appropriate prejudice inquiry asks whether there is a reasonable likelihood of a more favorable outcome on appeal had the claim been preserved." Davis v. Sec'y for the Dep't of Corr., 341 F.3d 1310, 1316 (11th Cir. 2003) (per curiam) (citation omitted).

17

In sum, "[w]ithout proof of both deficient performance and prejudice to the defense, . . . it could not be said that the sentence or conviction 'resulted from a breakdown in the adversary process that rendered the result of the proceeding unreliable,' and the sentence or conviction should stand." Bell v. Cone, 535 U.S. 685, 695 (2002) (internal citation omitted) (quoting Strickland, 466 U.S. at 687).

### VII. Findings of Fact and Conclusions of Law

#### A. Ground One

Petitioner claims that the trial court erred in "excluding the testimony of Horace Williams based on the attorney-client privilege." Petition at 5.  On October 8, 1999, Horace Williams (Petitioner's cellmate who was represented by the Public Defender's Office) made a statement to Investigator Ruda (who was employed with the Public Defender's Office) regarding Petitioner's case. Since Petitioner's counsel at the time had listed Horace Williams as a witness and had also listed Williams' statement, the investigator's report and the investigator's notes as evidence that he intended to use in Petitioner's trial, Williams' attorney filed a Motion to Exclude Testimony and Evidence.  Ex. G at 176-77.  In the January 7, 2000, Motion to Exclude Testimony and Evidence, she argued that Williams' statement to the investigator and the investigator's notes and report fall under the attorney-client

18

privilege and therefore the court should grant the motion to exclude. Id. at 177.

On January 14, 2000, the trial judge conducted a hearing on the motion to exclude. Ex. A at 89-125. At the hearing, Williams' attorney clarified that she sought to exclude Investigator Ruda being called as a witness to testify to the statements made by Horace Williams and to divulge the nature of the conversation. Id. at 6-7, 21, 25. At the hearing, Horace Williams asserted his Fifth Amendment right against self-incrimination and the attorney-client privilege. Id. at 19. The trial judge, after hearing testimony from Lou Frost, the Public Defender; Investigator Ruda; and, an Assistant Public Defender who was representing Horace Williams at the time the statement was given, made the following findings and conclusions:

> I find that in light of all the facts and circumstances [sic] been presented in the course of this hearing that the privilege was one that runs throughout the [Public Defender's] office involving the attorneys as well as investigators, and there I'm going to grant the motion to exclude the testimony of the investigator pertaining to the oral statements made by Mr. Williams regarding the Edwards['] case. And based on the fact at the particular time of the statements made by Mr. Williams to the investigator, Mr. Williams was being represented by an attorney within the office of the Public Defender for the Fourth Judicial Circuit, [the] investigator was employed by the Fourth Judicial Circuit, so therefore the privilege applies, not only to the oral statements but as well as to the written statements. And that will be suppressed for purposes of trial both in

opening statements as well as calling the
investigator to testify.

However, Mr. Willmott certainly has a
responsibility to represent Mr. Edwards to the
best of his ability and try to put on
witnesses on [sic] to investigate those facts.
Certainly Mr. Willmott may wish to have an
investigator visit Mr. Williams and try to
interview him, to gather information
pertaining to this offense.  And if Mr.
Williams independently knows anything about
the facts in the Warren Edwards' case, but if
he were to do so certainly he would have to
advise Miss Hepler [his attorney] first and
she would have the right to be present with
Mr. Williams during any interview.  Even if he
wished to take a deposition of him, so Mr.
Williams could be advised of his rights and
constitutional rights as well.

So that having been said the motion to
exclude the testimony and evidence is granted.

Id. at 121-23.  The trial court ruling excluded only the statements

made to the investigator.    The trial court ruled that Horace

Williams could testify if he chose to do so.   Id. at 122-23, 124-

25.  Thus, contrary to Petitioner's basic premise of his claim, the

trial court ruling did not deprive Petitioner of the right to call

Horace Williams as a witness.

As noted by the Respondents, this issue based on a state court

evidentiary ruling is not cognizable on federal habeas corpus

review.   See Response at 14.   The purpose of a federal habeas

proceeding is review of the lawfulness of Petitioner's custody to

determine whether that custody is in violation of the Constitution

or laws or treaties of the United States.[3] <u>Coleman v. Thompson</u>, 501 U.S. 722, <u>reh'g denied</u>, 501 U.S. 1277 (1991).

The Eleventh Circuit has stated that only in cases of federal constitutional error will a federal writ of habeas corpus be available. <u>See Jones v. Goodwin</u>, 982 F.2d 464, 471 (11th Cir. 1993); <u>Krasnow v. Navarro</u>, 909 F.2d 451, 452 (11th Cir. 1990). The Supreme Court has often held that federal habeas relief does not lie for errors of state law. Clearly, it is not the province of a federal habeas court to reexamine state-court determinations on issues of state law. <u>See Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991). "This limitation on federal habeas review is of equal force when a petition, which actually involves state law issues, is 'couched in terms of equal protection and due process.'" <u>Branan v. Booth</u>, 861 F.2d 1507, 1508 (11th Cir. 1988) (quoting <u>Willeford v. Estelle</u>, 538 F.2d 1194, 1198 (5th Cir. 1976)).

**B. Ground Two**

Petitioner claims the trial court erred in denying his motions for judgment of acquittal. Petitioner has not presented an issue of federal constitutional dimension insofar as he claims that the trial court erred in denying his motions for judgment of acquittal.

---

[3] A federal district court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2254(a).

21

Whether the trial court erred under Florida law in denying his motions for judgment of acquittal is purely an issue of state law that is not cognizable on federal habeas review.  <u>See</u> Response at 17.

Even assuming arguendo that Petitioner exhausted a federal sufficiency of the evidence issue and attempts to present such a claim in ground two[4], the claim is without merit.  After the State rested its case, defense counsel moved for a judgment of acquittal on the ground that, although Petitioner wrote the letter and Judge Johnson received the letter, the State failed to prove that Petitioner sent or procured to send the letter.  Tr. at 240-41.  In denying defense counsel's motion for judgment of acquittal, the trial judge concluded:

> All right.  Certainly in light of Mr. Edwards' stipulation there is no doubt he is the one who was the author, composed the particular letter.
>
> The letter was addressed by -- addressed on the envelope to Judge Johnson.  Again Mr. Edwards has stipulated he is the one who addressed the envelope as well.  Certainly been placed in there with the intent to be delivered.  I think that's [sic] a reasonable inference can be made.
>
> So I think in the light looking at the evidence in the light most favorable to the

_____

[4] To the extent that the appellate court adjudicated the federal constitutional sufficiency issue on the merits, this ground should be addressed applying the deferential standard for federal court review of state court adjudications, as required by AEDPA. <u>See</u> Section VII.A.

> State the State has met their burden of
> proving the elements which are required by the
> statute. So therefore the defendant's motion
> for directed verdict be [sic] denied.

Id. at 242.

After the conclusion of the evidence, defense counsel renewed

the motion for judgment of acquittal. Id. at 290. The trial judge

stated:

> Well, obviously there is no doubt this
> letter was sent out in the mail, received in
> the mail, so that was in fact accomplished.
>
> Yes, Mr. Edwards has testified that
> wasn't his intention for the letter to be
> mailed but certainly once he takes the oath
> and testifies he becomes like any other
> witness, that is, factual dispute and the
> juror -- jurors are permitted to decide what
> weight, credibility, merit they wish to give
> the statements of Mr. Edwards, they can accept
> part of it, some of it, all of it, or reject
> it all.
>
> But anyway, that is certainly a factual
> issue best left to the jury for their
> determination. So I would respectfully deny
> your motion for directed verdict.

Id. at 291.

"The Constitution prohibits the criminal conviction of any

person except upon proof of guilt beyond a reasonable doubt."

Jackson v. Virginia, 443 U.S. 307, 309 (1979) (citation omitted).

In Jackson v. Virginia, the United States Supreme Court articulated

the standard of review in a federal habeas corpus proceeding where

a petitioner claims he has been convicted upon insufficient

evidence: "[t]he constitutional test for the sufficiency of the

23

evidence is 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"   Felker v. Thomas, 52 F.3d 907, 909 (11th Cir. 1995) (quoting Jackson v. Virginia, 443 U.S. at 319), cert. denied, 516 U.S. 1133 (1996).

Of course, "[t]he Court need not exclude every reasonable hypothesis of innocence or find guilt to be the only reasonable conclusion." United States v. Garcia, 13 F.3d 1464, 1473 (11th Cir.) (citing United States v. Kelly, 888 F.2d 732, 740 (11th Cir. 1989)), cert. denied, 512 U.S. 1226 (1994). Furthermore, "[i]t is clear that the Jackson standard of review is '[e]qually applicable to direct or circumstantial evidence.'" Martin v. State of Alabama, 730 F.2d 721, 725 (11th Cir. 1984) (quoting United States v. Wuagneux, 683 F.2d 1343, 1358 (11th Cir. 1982)). In addition, the state court's sufficiency determination is due deference.

Thus, after a thorough and exhaustive review of the trial transcript and the record, it is clear that the State presented sufficient evidence against Petitioner and that Petitioner had the opportunity to cross examine the witnesses to challenge their credibility. Further, Petitioner testified on his own behalf and therefore explained to the jury that he never intended for the letter to be mailed and did not tell his cell mate to mail the letter.

It was the jury's duty to decide which evidence was reliable and credible. Resolution of conflicts in testimony is the province of the jury. The jury assessed the credibility of the witnesses and weighed the evidence. Here, the jury was present in the courtroom, observed all of the witnesses and chose to believe the State's witnesses rather than Petitioner. The relevant question is whether any rational jury, after viewing the evidence in the light most favorable to the prosecution, could have found the essential elements of written threats to kill or do bodily harm beyond a reasonable doubt. The Court, here, answers that question in the affirmative. Based on the evidence presented at the trial, any rational trier of fact could have found beyond a reasonable doubt that Petitioner was guilty of written threats to kill or do bodily harm. Thus, Petitioner's claim is without merit. <u>See</u> Response at 18-19.

### C. Grounds Four and Nine/Prosecutorial Misconduct

Petitioner claims prosecutorial misconduct for offering perjured testimony (ground four) and prosecutorial misconduct for telling the jury, during closing argument, to disregard Petitioner's testimony (ground nine). As noted by Respondents,

Petitioner failed to raise these claims on direct appeal.[5]  See Response at 20.

Since Petitioner failed to present his claims in state court in a procedurally correct manner, the grounds are now procedurally barred.  A petition for writ of habeas corpus should not be entertained unless the petitioner has first exhausted his state remedies.  See Castille v. Peoples, 489 U.S. 346, 349, reh'g denied, 490 U.S. 1076 (1989); Rose v. Lundy, 455 U.S. 509 (1982).  "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." Turner v. Crosby, 339 F.3d 1247, 1281 (11th Cir. 2003) (quoting O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999)).  "This exhaustion doctrine 'is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts.'" Turner, 339 F.3d at 1281 (quoting O'Sullivan, 526 U.S. at 845).

Generally, a federal habeas petition should be dismissed if the petitioner has failed to exhaust state remedies.  See Keeney v. Tamayo-Reyes, 504 U.S. 1, 10 (1992).  A federal court need not

---

[5] Petitioner Edwards also raised the issues in terms of ineffectiveness of counsel.  Those claims will be addressed in conjunction with the other ineffectiveness claims in Section VII.D.

dismiss the petition to allow for exhaustion of state remedies, however, if such a dismissal would be futile.

> [I]f the petitioner simply never raised a claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred due to a state-law procedural default, the federal court may foreclose the petitioner's filing in state court; the exhaustion requirement and procedural default principles combine to mandate dismissal.

Bailey v. Nagle, 172 F.3d 1299, 1303 (11th Cir. 1999) (per curiam) (citing Snowden v. Singletary, 135 F.3d 732, 737 (11th Cir.), cert. denied, 525 U.S. 963 (1998)).

Here, Petitioner could have and should have raised these claims on direct appeal. It would be futile to dismiss this case to give him the opportunity to exhaust these claims on direct appeal. Thus, Petitioner has procedurally defaulted these claims.

"Procedural defaults in state courts will foreclose federal court review, absent a showing of cause and prejudice." Parker v. Sec'y for the Dep't of Corr., 331 F.3d 764, 770 (11th Cir. 2003) (citing Wainwright v. Sykes, 433 U.S. 72 (1977)), cert. denied, 540 U.S. 1222 (2004). "[A] petitioner may gain federal review of an otherwise procedurally defaulted claim if he can demonstrate both cause excusing the default and actual prejudice resulting from the bar." Hill v. Jones, 81 F.3d 1015, 1022-23 (11th Cir. 1996) (citations omitted), cert. denied, 519 U.S. 1119 (1997).

Here, Petitioner has not shown both cause excusing the default and actual prejudice resulting from the bar.   Furthermore, he has not shown that he is entitled to the fundamental miscarriage of justice exception.   For these reasons, the Court need not review the merits of Petitioner's grounds.[6]

## D. Ineffectiveness of Trial Counsel Claims

Petitioner claims counsel was ineffective for failure to interview, depose and call witnesses (ground three), for allowing the perjured testimony of Officer Scott Bell (ground four), for failure to object to the State's failure to properly give written notice to defense counsel to use Petitioner's prior conviction as relevant evidence to prove Petitioner's guilt (ground five), for failure to renew an objection during trial regarding the State's disclosing the amount of prison time Petitioner received for the prior conviction (ground six), for failure to object to the State's speculation as to his motive for making the threat to Judge Johnson (ground seven), for failure to request a jury instruction for Petitioner's prior conviction (ground eight) and for failure to object when the prosecutor, during closing argument, told the jury to disregard Petitioner's testimony (ground nine).

Petitioner Edwards raised these claims in his Rule 3.850 motion.   The trial court adjudicated the claims on the merits, and

---

[6] Even assuming that procedural default is not applicable, the claims are without merit.   See Response at 20-25; Ex. G at 101-08.

the appellate court per curiam affirmed.   The trial court, in denying the claims, identified the two-pronged test established in <u>Strickland</u> and stated, in pertinent part:

> On February 10, 2000, following a jury trial, the Defendant was convicted of Written Threats and was sentenced to a term of fifteen (15) years of incarceration. (Exhibit "A.") The Defendant's conviction and sentence were affirmed on appeal through a Mandate issued on July 13, 2001. (Exhibit "B.")
>
> In the Defendant's instant Motion, he raises seven claims for relief premised on allegations of ineffective assistance of counsel. In order to prevail on a claim of ineffective assistance of counsel, the Defendant must show that: (1) counsel's performance was outside the wide range of reasonable professional assistance, and (2) counsel's deficient performance prejudiced the defense, that is, that there is a reasonable probability that the outcome of the proceeding would have been different absent counsel's deficient performance. <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984); <u>Cherry v. State</u>, 659 So.2d 1069, 1072 (Fla. 1995). Further, the "standard is reasonably effective counsel, not perfect or error-free counsel." <u>Coleman v. State</u>, 718 So.2d 827, 829 (Fla. 4th DCA 1998). A claim of ineffective assistance of counsel will warrant an evidentiary hearing only where the Defendant alleges "specific facts which are not conclusively rebutted by the record and which demonstrate a deficiency in performance that prejudiced the defendant." <u>Roberts v. State</u>, 568 So.2d 1255, 1259 (Fla. 1990). Further, "[t]o establish prejudice [a defendant] 'must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" <u>Valle v. State</u>, 778 So.2d 960, 965-66 (Fla. 2001).

In the Defendant's first ground for relief, he alleges that counsel rendered ineffective assistance for failing to object to the State not filing written notice to the defense that it would disclose to the jury the Defendant's prior conviction and statements made at the sentencing hearing. The Defendant's claim is knowingly false and frivolous. In the State's Second Supplemental Response to Demand for Discovery, the State disclosed that it intended to use "[s]tatements made in court and letters sent in [the] prior case and threat in this case." (Exhibit "C.") In the State's Fourth Supplemental Response to Demand for Discovery, the State disclosed that it also intended to utilize that:

> On 7/8/99 as he was being led out of the courtroom defendant made the following statements which were overheard by bailiffs Bell and Dearborn: you fat bitches are in this together and I'll fucking get you for this.

(Exhibit "D.") The State provided the defense written notice prior to trial that it intended to rely on events surrounding his prior felony conviction at trial. Therefore, the Defendant has failed to establish error on the part of counsel. <u>Strickland</u>. Accordingly, the Defendant's claim is without merit and must be denied.

In the Defendant's second ground for relief, he alleges that counsel was ineffective for failing to object to the State['s] asking Judge Jean Johnson the sentence she had previously imposed on the Defendant. The Defendant argues that the Court had previously granted the Defendant's Motion in Limine on this issue and that counsel objected to such questioning. The Defendant's claim is knowingly false and frivolous. During oral arguments on the Defendant's First Motion in Limine, the following occurred:

Mr. De La Rionda:  I was not - just for clarification, Judge, I was not going to get into what the actual crimes were because there are three crimes, specifically attempted murder, first degree murder, aggravated battery and aggravated battery, I wasn't going to mention what those crimes was [sic].

The Court:  Just that he pled and had a pending felony charge and pled and got sentenced?

Mr. De La Rionda:  Yes, sir, yes, sir.

The Court:  You oppose that?

Mr. Willmott:  If we could limit it to that but no mention of how much time he receives.  If the jury hears he got 19 years they will wonder what he did, and assume it's pretty bad.

Mr. De La Rionda:  Our position is that it's very relevant as to the actual time because, in fact, some of the letters that he sent to the Judge which were not in a threatening manner as the case was pending he was asking for probation and just minor time.  And in fact, the Judge gave him 19 years.  That help [sic] establish why he in fact threatened her.

The Court:  I concur and I think that's limiting the testimony to take as much of the prejudicial aspect as to the prior case since obviously they should not be concerned with that type of conduct or the crime that was charged or the actions per say [sic], and that underlying case, but I think it's necessary for the State to at least

lay out the skeleton version so as
to put the thing in context so the
jury could understand the possible
reason and motives they [sic] may
have been on Mr. Edwards['] behalf.

But as the motion is framed I would
grant it in the sense of the
testimony as to the other crimes
themselves, or wrongs or acts would
be inadmissible as to those
particular facts.  So within that
parameter show the defendant's first
motion in limine is granted.

(Exhibit "E," pages 6-8.)  The Court held that
the State could ask questions regarding the
fact that the Defendant had previously been
convicted of a felony and sentenced by Judge
Johnson to a term of nineteen (19) years of
incarceration.   Therefore, counsel's failure
to object to the State's questioning of Judge
Johnson was not erroneous.   <u>Strickland</u>.
Accordingly, the Defendant's claim is without
merit.

In the Defendant's third ground for
relief, he alleges that counsel was
ineffective for failing to object to the
State's comments on the Defendant's
credibility and prior convictions during
closing arguments.   Initially, this Court
notes that wide latitude is permitted in
arguing to a jury.  <u>Thomas v. State</u>, 326 So.2d
413 (Fla. 1975); <u>Spencer v. State</u>.   The
standard of review of prosecutorial misconduct
is whether "the error committed was so
prejudicial as to vitiate the entire trial."
<u>Cobb v. State</u>, 376 So.2d 230, 232 (Fla. 1979).
<u>See Jones v. State</u>, 612 So.2d 1370 (Fla.
1993); <u>State v. Murray</u>, 443 So.2d 955 (Fla.
1984).

The comments by the prosecutor, which the
Defendant complains of, did not rise to the
level of vitiating the entire trial.   This
Court finds that the State's comments were
fair comments on the evidence and were not so

32

inflammatory or prejudicial as to warrant a mistrial. (Exhibit "F," pages 297-309). Jones v. State, 652 So.2d 346 (Fla. 1995); Burr v. State, 466 So.2d 1051, 1054 (Fla. 1985), cert. denied, 474 U.S. 879 (1985). Moreover, the comments by the prosecutor did not '"inflame the minds and passions of the jurors so that their verdict reflect[ed] an emotional response to the crime or the defendant rather than the logical analysis of the evidence in light of the applicable law.'" Jones v. State, 612 So.2d 1370, 1374 (Fla. 1993) quoting Bertolotti v. State, 476 So.2d 130 (Fla. 1985). Therefore, the Defendant's claim is without merit.

In the Defendant's fourth ground for relief, he presents two sub-claims for relief. In the Defendant's first sub-claim, he alleges that counsel rendered ineffective assistance by failing to depose and call Horace Williams. The Defendant's claim is knowingly false and frivolous. Initially, this Court notes that Horace Williams filed a Motion to Exclude his testimony in the instant case, which was granted by the Court on January 14, 2000. (Exhibits "G," "H.") On, [sic] January 24, 2000, Horace Williams appeared before the Court and testified that he was not willing to testify on the Defendant's behalf. (Exhibit "F," pages 151-152.) Mr. Williams further testified that did not tell the Defendant that he was willing to testify at the Defendant's trial. (Exhibit "F," page 153.) The Defendant cannot establish error on the part of counsel for failing to present Mr. Williams' testimony, where Mr. Williams was unwilling to testify on the Defendant's behalf. Therefore, the Defendant's claim is without merit.

In the Defendant's second sub-claim he alleges that counsel was ineffective for failing to depose Officer Scott Bell, Edmund Powell, Officer William Dearborn, Carla Williams, David Register and Diane McDougall. Initially, this Court notes that Ms. Williams and Mr. Register were listed as Category C

witnesses and that Mr. Powell and Ms. McDougall were listed as Category B witnesses. (Exhibits "C," "I.") Counsel was not permitted to depose Ms. Williams, Mr. Register, Mr. Powell or Ms. McDougall. Florida Rule of Criminal Procedure 3.220(h)(1)(C) states that a Category C witness shall not be deposed unless the Court determines that the individual should be listed in another category. Florida Rule of Criminal Procedure 3.220(h)(1)(B) prohibits taking depositions of Category B witnesses except upon leave of the Court. The Defendant has not show[n] that good cause existed in order to request permission to depose Mr. Powell and Ms. McDougall. The Defendant has failed to establish error on the part of counsel for failing to depose Ms. Williams, Mr. Powell, Mr. Register and Ms. McDougall or prejudice to his defense. <u>Strickland</u>. The Defendant's allegation that counsel was ineffective for failing to depose Officer Dearborn is facially insufficient. The Defendant has not alleged error on the part of counsel or that counsel's failure to depose Officer Dearborn resulted in prejudice to his case. <u>Strickland</u>.

The Defendant also argues that counsel should have deposed Officer Bell to "have a more informed argument showing that the testimony of Officer Bell was false by comparing and questioning Edmund Powell, the stenographer, about the contents of the transcripts." (Defendant's Motion at 6 (4).) The Defendant's contention is that Officer Bell committed perjury because the transcript does not contain the Defendant's statements that Officer Bell testified to. Officer Bell testified at trial that as he and Officer Dearborn escorted the Defendant out through the back door of Judge Johnson's courtroom, he overheard the Defendant say something. (Exhibit "F," pages 212-213.) Officer Bell testified:

He said you fat Bitch, you fat
Bitches are in this together, and he

34

looked over his shoulder on the way
out and said I'll get you for this.

(Exhibit "F," page 213.)   Officer Bell,
further, testified that both Judge Johnson and
the female victim in that case were present in
the courtroom at the time of the Defendant's
statement. (Exhibit "F," pages 213-214.)

Edmund Powell, the Court Reporter in the
Defendant's previous case, read the sentencing
hearing transcript in which Judge Johnson
sentenced the Defendant to nineteen (19) years
of incarceration into evidence.  (Exhibit "F"
pages 199-207.) Mr. Powell continued reading
the transcript where the Defendant was later
the same day brought before Judge Johnson
again.   (Exhibit "F," pages 208-209.)
Finally, Mr. Powell testified that as the
Defendant was being escorted out of the
courtroom that he was unable to hear what the
Defendant was saying.   (Exhibit "F," page
209.)  The Defendant has failed to establish
that Officer Powell's testimony was perjured.
Moreover, the Defendant has failed to
establish how Officer Bell's deposition when
compared to Mr. Powell's testimony would have
established the [sic] Officer Bell was
offering perjured testimony.  The Defendant
has failed to establish error on the part of
counselor or prejudice to his defense.
Strickland.  Therefore, the Defendant's claim
is without merit.

In the Defendant's fifth ground for
relief, he alleges that counsel was
ineffective for failing to request a jury
instruction regarding the limited
admissibility of his prior convictions.  The
Defendant merely concludes that the jury
convicted him because it was aware of the fact
that he had at least one prior felony
conviction.   The Defendant has failed to
establish that but for counsel's failure to
request this jury instruction, the outcome of
the proceeding would have been different.
Strickland.   Accordingly, the Defendant's
claim is without merit.

35

In the Defendant's sixth ground for relief, he alleges that counsel was ineffective for failing to object to the State's speculation as to his motive for making the threat to Judge Johnson. Initially, this Court notes that the Defendant has failed to establish that a valid legal reason for an objection existed for counsel to object to the State's comments. This Court, further, notes that wide latitude is permitted in arguing to a jury. Thomas v. State, 326 So.2d 413 (Fla. 1975); Spencer v. State, 133 So.2d 729 (Fla. 1961), cert. denied, 369 U.S. 880 (1962), cert. denied, 372 U.S. 904 (1963). Logical inferences may be drawn, and counsel is allowed to advance all legitimate arguments. Spencer, 133 So.2d 729.

. . . .

In the Defendant's seventh ground for relief, he alleges that the State knowingly allowed Officer Bell to commit perjury at trial. The Defendant further alleges that counsel was ineffective for failing to object to the State['s] offering perjured testimony at trial. The Defendant argues that Officer Bell's testimony regarding the Defendant's statements after sentencing constituted perjury because they are not contained in the transcript prepared by Powell. The Defendant merely concludes that because his "alleged" statement is not contained in the transcript as read by Mr. Powell, that Officer Bell's testimony was perjured. As this Court has previously discussed in ground four, the Defendant has not established that Officer Bell's testimony constituted perjury. Accordingly, the Defendant has failed to establish that the State improperly offered perjured testimony or error on the part of counsel for failing to object to the introduction of [O]fficer Bell's testimony. Therefore, the Defendant's claims are without merit.

Ex. G at 101-08.

36

These grounds should be addressed applying the deferential standard for federal court review of state court adjudications, as required by AEDPA. Upon a thorough review of the record and the applicable law, it is clear that Petitioner is not entitled to relief on the basis of these claims because the state courts' adjudications of the claims were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. <u>See</u> Response at 25-39.

### VIII. Conclusion

Any other claims not specifically addressed are found to be without merit. Accordingly, for all of the above-stated reasons, the Petition will be denied and this case will be dismissed with prejudice.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.    The Petition (Doc. #1) is **DENIED,** and this action is

**DISMISSED WITH PREJUDICE.**

2.    The Clerk of the Court shall enter judgment denying the

Petition and dismissing this case with prejudice.

3.    The Clerk of the Court shall close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this _____ day of

November, 2005.

UNITED STATES DISTRICT JUDGE

sc 11/4
c:
Warren Lee Edwards
Ass't Attorney General (Hill)

38